# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DAVID SWEET, on behalf of himself and all others similarly situated,**

      **Plaintiff,**

-v-

      Case No.: 2:19-cv-1997
      JUDGE GEORGE C. SMITH
      Magistrate Judge Vascura

**CONNEXIONS LOYALTY, INC.,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Connexions Loyalty, Inc.'s Motion to Compel Individual Arbitration and Dismiss (Doc. 17). Plaintiff has responded (Doc. 23) and Defendant has replied (Doc. 24). This Motion is fully briefed and ripe for review. For the reasons that follow, Defendant's Motion to Compel Individual Arbitration and Dismiss is **GRANTED.**

### I.    BACKGROUND

Plaintiff David Sweet began his employment with Trilegiant Corporation in July 2010 and was employed there until October 19, 2015, when he began his employment with Connexions Loyalty, Inc.[1] Plaintiff was employed in various capacities at Connexions' call center in Westerville, Ohio, including most recently as a Customer Care Specialist from October 20, 2016, until his separation on July 12, 2018.

---

[1] Defendant Connexions Loyalty, Inc.'s name changed to cxLoyalty, Inc. on August 1, 2019. Both Plaintiff's former employer, Trilegiant and Connexions are subsidiaries of Affinion Group. LLC, which is a subsidiary of Affinion Group, Inc.

When Plaintiff began his employment, he was presented with an Agreement to Arbitrate Claims (the "2010 Agreement", attached as Ex. 2 to Defendant's Motion). The 2010 Agreement specified that it "applie[d] to all claims arising out of or related to your employment by the Company, including (but not limited to) disputes pertaining to compensation, promotions, discipline and discharge" and "you and the Company agree to submit the matter to final and binding arbitration before a neutral arbitrator per the terms set out" therein. (Doc. 17-2, 2010 Agreement at 1). "Company" was defined as "Affinion Group, Inc., its business units, operating companies and subsidiaries," which covered Trilegiant and Connexions Loyalty, Inc. (*Id*.). The 2010 Agreement further stated:

> You and the Company agree that final and binding arbitration shall be the sole and exclusive remedy for resolving any claims covered by this agreement. The parties hereby expressly waive the right to bring a court action in regard to any covered claim, including the right to a jury trial . . . .

(*Id*.). And directly above the 2010 Agreement's signature line, it contained the following disclaimer in bold and all caps font:

> **YOU UNDERSTAND AND AGREE THAT BY SIGNING THIS AGREEMENT (WHICH INCLUDES YOUR ELECTRONIC CONSENT OR SIGNATURE), YOU ARE GIVING UP THE RIGHT TO A JURY TRIAL WITH RESPECT TO ANY CLAIMS COVERED HEREUNDER.**

(*Id*. at 4) (emphasis in original).

Plaintiff signed the 2010 Agreement on July 26, 2010, as a condition of his employment. Connexions' then-Group Vice President of Human Resources, Michael Brown, counter-signed the 2010 Agreement on August 3, 2010. (Doc. 17-3, Signature Page at 1).

Beginning in October 2015, Connexions distributed an updated Agreement to Arbitrate Claims to then-current employees (like Plaintiff) by way of a mandatory interactive "Code of

Conduct" training. (Doc. 17-1, Decl. of Melissa Seymour at ¶ 6). The agreement was nearly identical to the 2010 Agreement, but added the following clause:

> The arbitrator will have no authority to consider a class or collective action brought by one or more employees on behalf of themselves and others or otherwise preside over any form of a representative or class proceeding. Rather, you and the Company agree that there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or as a class member in any purported class or collective proceeding.

(*See* Doc. 17-4, Exhibit 1-C ("2018 Agreement") at 2). The 2018 Agreement specified it "supersedes any prior or contemporaneous agreement on the subject hereof." (*Id*. at 3). Finally, above the signature line, it contained the following disclaimer in bold and all caps font:

> **YOU UNDERSTAND AND AGREE THAT BY SIGNING THIS AGREEMENT (WHICH INCLUDES YOUR ELECTRONIC CONSENT OR SIGNATURE), YOU ARE GIVING UP THE RIGHT TO A JURY TRIAL WITH RESPECT TO ANY CLAIMS COVERED HEREUNDER AS WELL AS ANY RIGHT TO PARTICIPATE IN A CLASS OR COLLECTIVE ACTION BECAUSE ALL CLAIMS SHALL BE RESOLVED EXCLUSIVELY THROUGH INDIVIDUAL ARBITRATION. YOU AND THE COMPANY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**

(*Id*. at 4) (emphasis in original).

As recently as May 22, 2018, Plaintiff completed the mandatory training, indicating he had read and agreed to comply with the 2018 Agreement and arbitrate all employment-related claims on an individual basis.[2] (Doc 17-1, Decl. of Melissa Seymour at. ¶ 10; *see also* Doc. 17-8, Exhibit 1-G (Screenshot – Completion of 2018 Training)). By doing so, Plaintiff (1) agreed to submit to mandatory and binding arbitration any claim or dispute related to his employment, including any

---

[2] Plaintiff also completed the training (and acknowledged his receipt and acceptance of the Company's arbitration agreement's terms) on November 10, 2015, and March 1, 2017. (Doc. 17-1, Decl. of Melissa Seymour at ¶ 10; Doc. 17-6, Exhibit 1-E (Screenshot – Completion of 2015 Training); Doc. 17-7, Exhibit 1-F (Screenshot – Completion of 2017 Training).

claims regarding his compensation, and (2) expressly waived any right to assert or arbitrate employment-related claims on a class or collective basis.

On May 16, 2019, Plaintiff initiated this action against Connexions on behalf of himself and others similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code §4111.01:99 ("OMFWSA") arising from Connexions' alleged "practices and policies of not paying its hourly, non-exempt employees . . . for all hours worked," including for time allegedly spent "starting, booting up, and logging into [Connexions'] computer systems, numerous software applications, and phone systems." (Doc. 1, Complaint at ¶¶ 1; 22).

## II.    STANDARD OF REVIEW

Defendant moved to compel arbitration and to dismiss all claims against them. Under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4. The Court must then "determine whether the parties agreed to arbitrate the dispute at issue." *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-2044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (Marbley, J.) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)*; see also Nestle Waters North America, Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) ("[W]e examine arbitration language in a contract in light of the

strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration."). However, "[w]hile ambiguities . . . should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted).

In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in light most favorable to the non-moving party." *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (Graham, J.). The Court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714.

The requirements set forth in the FAA were "designed to override judicial reluctance to enforce arbitration provisions, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Id*. "When an agreement to arbitrate encompasses claims asserted in court, dismissal is appropriate under Fed. Rule Civ. P. 12(b)(1) for lack of subject matter jurisdiction . . . ." *Deck v. Miami Jacobs Bus. College Co.*, No. 3:12-cv-63, 2013 WL 394875, at *7 (S.D. Ohio Jan. 31, 2013) (Black, J).

### III. DISCUSSION

Defendant Connexions has moved to compel arbitration and to dismiss this case. Defendant asserts that Plaintiff's claims arise out of his employment with Connexions and therefore fall squarely within the purview of the arbitration agreements Plaintiff signed during his

5

employment.  Plaintiff has filed a response and does not oppose Defendant's Motion to Compel.  However, Plaintiff disputes whether the arbitration agreements attached to Defendant's Motion are valid or enforceable.

Where the parties have entered into a binding arbitration agreement, as in the instant case, there is a presumption that any dispute between them is arbitrable.  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.  Therefore, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Plaintiff disputes whether the arbitration agreements are valid and enforceable, but ultimately does not oppose Defendant's Motion to Compel Individual Arbitration and Dismiss.  Therefore, based on the arguments set forth in Defendant's Motion to Compel Individual Arbitration and Dismiss and with no opposition from Plaintiff, the Court finds that all of Plaintiff's claims against Defendant must be resolved through arbitration.

Having found that all of Plaintiff's claims in this case must be submitted to arbitration, the Court must determine whether Plaintiff's Complaint should be dismissed or the case should be stayed pending arbitration.  The FAA directs the Court to stay an action pending arbitration.  Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  However, the Court also has the ability to dismiss a case when all issues raised in the complaint are arbitrable.

*See, e.g.*, *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Gassner v. Jay Wolfe Toyota*, No. 4:06-CV-1335 CAS, 2007 WL 1452240, at *4 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action."). Based on the applicable caselaw and Plaintiff's lack of opposition to Defendant's Motion, the Court concludes that dismissal of Plaintiff's Complaint is the appropriate remedy because all of Plaintiff's claims are arbitrable. The Court can discern no purpose for retaining jurisdiction and staying the action.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Compel Individual Arbitration and to Dismiss is **GRANTED**. Plaintiff's Motion to Certify Class is **DENIED AS MOOT**.

The Clerk shall remove Documents 15 and 17 from the Court's pending motions list. This matter shall be closed.

**IT IS SO ORDERED.**

    */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**